### NEW YORK & C. MAIL S. S. CO. v. ANSONIA CLOCK CO.

(District Court, S. D. New York. July 10, 1905.)

SHIPPING—RIGHT OF SHIP TO SHARE IN GENERAL AVERAGE—HARTER ACT.

 Although the Harter act of February 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946], relieves a shipowner from liability for the negligence of his servants in the navigation and management of the vessel, it does not, either expressly or by implication, render valid a contract which entitles him to share in a general average made necessary by such negligence, and a stipulation therefor in a bill of lading is void.

 [Ed. Note.—General average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Co., 20 C. C. A. 357.]

In Admiralty.

Wing, Putnam & Burlingham, for libellant.

Butler, Notman & Mynderse, for respondent.

ADAMS, District Judge.  This action was brought by the New York & Cuba Mail Steamship Company to recover from the Ansonia Clock Company, the sum claimed to be due to the former under an average bond given by the latter on the 31st day of May, 1901. The steamship Yucatan, belonging to the steamship company, negligently stranded on the 28th of May, 1901, on the Mexican Coast, between Campeche and Vera Cruz. She was hauled off the 29th of May and towed into the harbor of the latter port. Some salvage claims which became due from the steamship and cargo were adjusted and the goods were delivered to the various shippers upon the execution and delivery of average bonds. The respondent gave such a bond to the libellant, whereupon its goods were delivered to it. Subsequently the respondent's share of the salvage, amounting to $117.49, was paid without contest, but payment of a claim of $54.47, alleged to be due under the bond, was refused, hence this action which was brought to enforce payment.

The question involved is whether a clause contained in the bill of lading, seeking to avoid the effect of the decision of the supreme court in The Irrawaddy Case, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130, is valid.  Such clause provided:

"If the owner of the ship shall have exercised due diligence to make said ship in all respects seaworthy and properly manned, equipped and supplied, it is hereby agreed that in case of danger, damage or disaster resulting from fault or negligence of the pilot, master or crew in the navigation or management of the ship, or from latent or other defects, or unseaworthiness of the ship, whether existing at the time of shipment, or at the beginning of the voyage, but not discoverable by due diligence, the consignees or owners of the cargo shall not be exempted from liability for contribution in General

Average, or for any special charges incurred, but, with the shipowner shall contribute in General Average, and shall pay such special charges, as if such danger, damage or disaster had not resulted from such fault, negligence, latent, or other defects or unseaworthiness."

The clause was intended to supply by contract what the law was deficient in, with respect to average contributions, as shown by The Irrawaddy Case. There can be no doubt that the clause was sufficient to secure such a result if it was valid. The respondent contends that the said clause is unlawful and invalid under the statute of the United States known as the Harter Act and hereinafter quoted.

·The stranding in this case being admittedly negligent, nevethe·· less it is sought to make the cargo contribute to the ship for a part of her losses, incident to such stranding.

Concededly, such a result is not permissible unless the Harter Act makes provision to that effect. Before the Act, it was well settled in this country that ship owners could not protect themselves against the effect of negligence by contract. In The Irrawaddy, it was said (page 190 of 171 U. S., page 832 of 18 Sup. Ct., 43 L. Ed. 130):

"And it is the well-settled law of this court that a common carrier by sea cannot, by any stipulation with a shipper of goods, exempt himself from responsibility for loss or damage arising from the negligence of the officers or crew; that it is against the policy of the law to allow stipulations that will relieve a carrier from liability for losses caused by the negligence of himself or his servants. Liverpool Steam Co. v. Phoenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788."

It simply remains to consider what effect the Harter Act had upon the situation. The Act, so far as it is necessary to be considered here, is as follows (Act Feb. 13, 1893, c. 105, 27 Stat. 445, 2 Supp. Rev. St. pp. 81, 82 [U. S. Comp. St. 1901, p. 2946]):

"Chap. 105.—An act relating to navigation of vessels, bills of lading, and to certain obligations, duties and rights in connection with the carriage of property.

Be it enacted, &c., That it shall not be lawful for the manager, agent, master or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

Sec. 2. That it shall not be lawful for any vessel transporting merchandise or property from or between ports of the United States of America and foreign ports, her owner, master, agent, or manager, to insert in any bill of lading or shipping document any covenant or agreement whereby the obligation of the owner or owners of said vessel to exercise due diligence properly equip, man, provision, and outfit said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents, or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened, or avoided.

Sec. 3. That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners,

agent, or charterers shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service."

It is urged by the libellant that the object of the Act was to bring to ship owners in this country a relief already enjoyed by competing ship owners in Europe, through liberty to contract against negligence, and that as the ship owner is absolutely absolved by the Act for such negligent stranding as is here in question, he can now resort to a stipulation to protect him from the average results of such negligent navigation as caused by the loss.

The argument is plausible and would be entitled to serious consideration, if it did not change the policy of law with respect to the effects of negligence and allow the ship owner to obtain indirectly a relief which the Act seemingly does not give directly. I find nothing in the Act tending to show that Congress intended to go beyond its explicit provisions in changing the policy of the law and as this loss was the result of negligence, the effects of it must seemingly rest as they were before the enactment. As the Act now stands, there is very little in the way of legal liability for loss of or damage to cargo requiring care on the part of navigating officers in the management of vessels under their charge. Congress, in its wisdom, has seen fit to relieve vessels and their owners from all damage or loss resulting from faults or errors of navigation or in the management of vessels, but it has not gone to the extent of saying that notwithstanding negligence, affirmative relief may be had in such cases, by allowing stipulations to be made providing for the recovery of general average contributions. It seems to me that the case is one for legislative relief. It was said in The Irrawaddy (pages 193, 194 of 171 U. S., page 833 of 18 Sup. Ct., 43 L. Ed. 130):

"But we think that for the courts to declare, as a consequence of this legislation, that the ship owner is not only relieved from liability for the negligence of his servants, but is entitled to share in a general average rendered necessary by that negligence, would be in the nature of a legislative act. The act in question does, undoubtedly, modify the public policy as previously declared by the courts, but if Congress had intended to grant the further privilege now contended for it would have expressed such an intention in unmistakable terms. It is one thing to exonerate the ship and its owner from liability for the negligence of those who manage the vessel; it is another thing to authorize the ship owner to do what he could not do before, namely, share in the general average occasioned by the mismanagement of the master and crew."

It is urged by the libellant that the Harter Act in not forbidding such a contract as is now set up impliedly allows it, but, in my opinion, while there is no definite provision in the Act repugnant to the desired construction, there is nothing to warrant it, and in the absence of explicit authority in the act for such contract provision as is now desired to be validated, the old law, forbidding contracts

tending to overcome the effect of negligence, still remains in force and must be applied here.

It is further urged by the libellant that since the decision in The Irrawaddy, a matter pertinent here which was regarded as doubtful under the English authorities, has since been approved by the courts there. It was said in The Irrawaddy (page 194 of 171 U. S., page 834 of 18 Sup. Ct., 43 L. Ed. 130):

"It is said that it has been decided by the English courts that when, by a contract in the bill of lading, the ship owner is exonerated from liability for loss caused by the fault of the master or crew, he is entitled to share in a general average contribution.

An examination of the cases cited has not convinced us that there has been any such final decision by the English courts. * * *"

The case particularly referred to was The Carron Park, 15 P. D. 203, 6 Asp. Mar. Law Cas. 543. The approval will be found in Milburn & Co. v. Jamaica Fruit Importing & Trading Co. of London, 2 Q. B. 540, 9 Asp. Mar. Law Cas. 122.

It does not seem important, however, that the English ruling is thus strengthened. It was said in The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130 (page 195 of 171 U. S., page 834 of 18 Sup. Ct., 43 L. Ed. 130):

"But whatever may be the English rulings as to the effect of contract immunity from negligence as entitling the ship owner to claim in general average, we do not think the cases are parallel. By the English law the parties are left free to contract with each other, and each party can define his rights and limit his liability as he may think fit. Very different is the case where a statute prescribes the extent of liability and exemption."

The libel is dismissed.